UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAVERNE HENDERSON, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) Case No. 4:20 CV 1080 RWS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

Laverne Henderson seeks to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.  On May 10, 2019, Henderson pled guilty to one count of Possession With Intent to Distribute Cocaine and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime.  [Docs. 47, 48, and 86 in Case number 4:19 CR 104 RWS].  On August 22, 2019, Henderson was sentenced to a total of 211 months' imprisonment, consisting of 151 months on Count 1 of the superseding indictment and 60 months on Count 3, to run consecutively.  [Docs. 74, 82 in Case number 4:19 CR 104 RWS].  This sentence was well below his guidelines range of 262-327 months and in accord with the parties' joint sentencing recommendation contained in the plea agreement.  Henderson did not appeal.

Despite the substantial sentencing break Henderson received, he has now filed this § 2255 motion *pro se*, raising the following grounds for relief:

1) Ineffective assistance of trial counsel for failing to adequately advise movant about the benefits and consequences of going to trial versus pleading guilty;

2) Ineffective assistance of trial counsel for failing to advise movant that the Court lacked subject matter jurisdiction;

3) Ineffective assistance of trial counsel for failing to advise movant that "the prosecution failed to have statutory authority" and failed to have "a factual basis for the plea;" and

4) 18 U.S.C. § 924(c) is unconstitutionally vague, citing *United States v. Davis*, 139 S. Ct. 2319 (2019).[1]

Henderson's ineffective assistance of counsel claims are all meritless, and *Davis* does not apply to Henderson. Accordingly, I will deny Henderson's motion without an evidentiary hearing for the reasons that follow.

## Discussion

### A. No Evidentiary Hearing is Required

The records before me conclusively demonstrate that Henderson has no right to relief. I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief."

---

[1] This claim was raised in a motion to amend, which respondent objects to as untimely. Even if timely, it is meritless for the reasons discussed below.

*Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citations omitted). The record here conclusively refutes the claims, so I will not hold an evidentiary hearing.

### B. Henderson Did Not Receive Ineffective Assistance of Counsel

Henderson brings claims of ineffective assistance of trial counsel. The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Henderson must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* Second, Henderson "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires him to demonstrate

3

"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  This means that Henderson must demonstrate "that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty but would have proceeded to trial." *United States v. Davis*, 508 F.3d 461, 463 (8th Cir. 2007).  The court need not address both components if the movant makes an insufficient showing on one of the prongs.  *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).  Under these standards, Henderson did not receive ineffective assistance from his attorney.

Henderson appeared before me on May 10, 2019 for a change of plea hearing.  [Doc. 86 in Case number 4:19 CR 104 RWS].  At the outset of the plea hearing, I advised Henderson that I was "not in a hurry" so that "if, at any time, [he felt] the need to consult with [his] attorney," he would be granted "whatever time [he needed] to consult with [his] attorney." [Doc. 86 in Case number 4:19 CR 104 RWS at 3].   Henderson said that he understood and was placed under oath.  [Doc. 86 in Case number 4:19 CR 104 RWS at 3].

Henderson indicated that he was 37 years old at the time of the plea and that he had earned 64 credits toward a college degree but had not graduated.  [Doc. 86 in Case number 4:19 CR 104 RWS at 3-4].  Henderson denied that he was under the care of a doctor, suffered from a chronic health condition, or had taken any prescription medication.  [Doc. 86 in Case number 4:19 CR 104 RWS at 4].

4

Henderson also indicated that there was no medication that he should be taking and denied that he was under the care of a psychiatrist or psychologist. [Doc. 86 in Case number 4:19 CR 104 RWS at 4]. Similarly, Henderson reported that he had not taken any drugs or alcohol in the preceding 24 hours, and was not under the influence of drugs. [Doc. 86 in Case number 4:19 CR 104 RWS at 5]. Henderson stated that he understood what was happening and the purpose for the hearing. [Doc. 86 in Case number 4:19 CR 104 RWS at 5]. I therefore found Henderson competent to proceed. [Doc. 86 in Case number 4:19 CR 104 RWS at 5].

    I reminded Henderson that he faced felony charges and that, as a result, he was entitled to the representation of an attorney. [Doc. 86 in Case number 4:19 CR 104 RWS at 5]. Henderson confirmed that he had had sufficient time to discuss his case with his attorney, and he swore that he was satisfied with his attorney's assistance. [Doc. 86 in Case number 4:19 CR 104 RWS at 6].

    I went over each of the rights Henderson was giving up by pleading guilty, including his right to a speedy and public trial by a judge or jury, the presumption of innocence, the burden of proof that the government would have to meet, his right to cross-examine witnesses, object to evidence, call witnesses, and offer evidence on his own behalf, his right to testify and his right not to testify. [Doc. 86 in Case number 4:19 CR 104 RWS at 6-7]. Henderson indicated that he understood each of these rights and that he was waiving or giving up each of these

5

rights by pleading guilty.  [Doc. 86 in Case number 4:19 CR 104 RWS at 7]. When asked if anyone had threatened him, forced him, or in any way coerced him into pleading guilty, Henderson responded, "No, sir."  [Doc. 86 in Case number 4:19 CR 104 RWS at 7].

    I then reviewed the plea agreement with Henderson.  Henderson admitted that he signed it and that he read and understood the agreement before signing it. [Doc. 86 in Case number 4:19 CR 104 RWS at 7-8].  Henderson stated that he reviewed the agreement with his attorney before he signed it, and that his attorney answered all his questions about the plea agreement.  [Doc. 86 in Case number 4:19 CR 104 RWS at 7-8].   I then asked Henderson, "Is everything in here true?" [Doc. 86 in Case number 4:19 CR 104 RWS at 8].  Henderson responded, "Yes, sir."  [Doc. 86 in Case number 4:19 CR 104 RWS at 8].

    I explained that sentencing would take place several months after the plea hearing and that a presentence report would be prepared.  [Doc. 86 in Case number 4:19 CR 104 RWS at 8].  Henderson stated that his lawyer had explained what a presentence report was and how the guidelines work.  [Doc. 86 in Case number 4:19 CR 104 RWS at 8-9].  After reviewing the provisions of his plea agreement with Henderson, I acknowledged that the parties intended to make a joint recommendation at the time of sentencing that Henderson receive a sentence of 211 months. [Doc. 86 in Case number 4:19 CR 104 RWS at 11].  I also told

6

Henderson that the parties believed that his "criminal history makes [him] a career offender." [Doc. 86 in Case number 4:19 CR 104 RWS at 12].  Henderson indicated that he understood and had discussed that matter with his attorney. [Doc. 86 in Case number 4:19 CR 104 RWS at 12].

The Assistant United States Attorney then recited a summary of the facts she believed respondent would prove beyond a reasonable doubt in the event of trial. [Doc. 86 in Case number 4:19 CR 104 RWS at 14-15]. I then asked Henderson, "You did what she says you did?" [Doc. 86 in Case number 4:19 CR 104 RWS at 16]. Henderson responded, "Yes, sir, I did." [Doc. 86 in Case number 4:19 CR 104 RWS at 16]. Henderson admitted that he was responsible for 400 to 500 grams of cocaine and that he understood that his sentence on Count 2 would be 60 months and run consecutively to any sentence on Count 1. [Doc. 86 in Case number 4:19 CR 104 RWS at 12].

After confirming that he understood all the potential consequences of pleading guilty, including that he may lose the rights to vote, hold public office, serve on a jury, and possess a firearm, I asked Henderson, "[I]s it still your decision to plead guilty?" [Doc. 86 in Case number 4:19 CR 104 RWS at 19]. Henderson responded, "Yes, sir, it is." [Doc. 86 in Case number 4:19 CR 104 RWS at 19].  When asked for his pleas, Henderson responded, "I plead guilty to Count I," and "I plead guilty to Count 3." [Doc. 86 in Case number 4:19 CR 104

7

RWS at 19]. I then accepted Henderson's pleas to Count I and Count 3, specifically finding that Henderson was "competent to enter guilty pleas," and that his pleas were "made knowledgeably and voluntarily, and they have a basis in fact that contains all of the elements of the offense [sic] charged." [Doc. 86 in Case number 4:19 CR 104 RWS at 19].

The parties appeared for sentencing on August 22, 2019. Henderson had no objections to the Presentence Investigation Report and admitted that his advisory guidelines range was 262-327 months. [Doc. 82 in Case number 4:19 CR 104 RWS at 3]. Henderson's counsel spoke on his behalf, urging me to accept the parties' joint recommendation for a sentence of 211 months. [Doc. 82 in Case number 4:19 CR 104 RWS at 4-5]. Then Henderson spoke, accepting full responsibility for his offenses and apologizing to "the citizens of the Eastern District of Missouri who may have been victimized by my crimes;" his "family, friends, and comrades;" his "father and mother;" his "daughter Taylor,"; and his "fiancée, Katlyn," who would be forced to raise their newborn daughter alone. [Doc. 82 in Case number 4:19 CR 104 RWS at 5-7]. Henderson also expressed love to his grandparents, his sisters, his brother, his nieces and nephews, his mother, his "aunts and uncles on the Henderson side," and others. [Doc. 82 in Case number 4:19 CR 104 RWS at 7-8]. After considering all relevant sentencing factors, I accepted the parties' joint recommendation and imposed a total sentence

of 211 months, which is a sentence well below Henderson's advisory guidelines range.  [Docs. 74, 82 at 9 in Case number 4:19 CR 104 RWS].  On the day he was sentenced, Henderson filed a notice in compliance with the Court's local rule 12.07 in which he acknowledged in writing that he had "been fully informed of [his] right to appeal the final judgment in this case," and indicated that he did "not wish to file a Notice of Appeal" and had instructed his attorney not to file such notice. [Doc. 73 in Case number 4:19 CR 104 RWS].  He did not appeal.

      Henderson makes vague allegations of ineffective assistance of counsel which are conclusively contradicted by his own admissions and the records in his criminal case.  Although Henderson complains generally about witnesses his attorney did not talk to, he never specifically identifies any witness by name or indicates what their testimony might have been or, most importantly, how counsel's alleged failure to contact these witnesses in any way prejudiced his defense.  The same is true of his vague allegations regarding discovery.  Henderson never specifies what discovery his attorney allegedly failed to conduct or how this failure in any way demonstrates the requisite prejudice necessary to maintain an ineffective assistance of counsel claim.  Although Henderson complains that these failures somehow resulted in him pleading guilty without being "fully informed of the consequences of pleading guilty versus going to trial," the transcript of his plea colloquy conclusively demonstrates otherwise.

Henderson read and understood the plea agreement, he admitted he was guilty of the offenses outlined in the agreement, and he assured me that he fully understood each of the rights he waived by pleading guilty. He also told me that was not coerced or forced in any way to plead guilty, and there is nothing in his unsupported § 2255 motion that demonstrates otherwise. Finally, Henderson told me that there was a factual basis for the plea because he did what the plea agreement says he did, and his statements made during his plea hearing and at sentencing, as well as his failure to object to the PSI, further confirm this fact. Henderson's solemn declarations made to me under oath cannot be contradicted now. *See Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997).

Under these circumstances, counsel cannot be considered ineffective for failing to advise Henderson that there was not a factual basis for the plea. Henderson has also failed to demonstrate any resulting prejudice from counsel's alleged failures to talk to witnesses or conduct discovery, and he has failed to demonstrate that counsel was ineffective for allegedly failing to advise him of the consequences of pleading guilty or that counsel coerced him in any way into pleading guilty. As for his claim that his attorney was ineffective for failing to argue that the Court "lacked jurisdiction" or "statutory authority," these claims fail as the arguments are meritless and counsel cannot be ineffective for failing to raise or win a meritless argument. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th

Cir. 1994) ("[C]ounsel's failure to raise a meritless argument cannot constitute ineffective assistance.").

Moreover, counsel advocated ably on Henderson's behalf, successfully negotiating a joint recommended sentence with the Assistant United States Attorney which was substantially below Henderson's guidelines range -- a recommendation I ultimately adopted. Under these circumstances, Henderson cannot demonstrate the requisite deficient performance or resulting prejudice necessary to maintain his ineffective assistance of counsel claims as a matter of law. Grounds 1 through 3 of Henderson's § 2255 motion are denied.

Finally, even if Henderson were granted leave to bring a claim under *Davis* it would fail as *Davis* does not apply to Henderson. In *Davis*, the United States Supreme Court held that 18 U.S.C. "§924(c)(3)(B) is unconstitutionally vague." 139 S. Ct. at 2336. While *Davis* struck down the definition of "crime of violence" found in §924(c)(3)(B), it left untouched the definition of "drug trafficking crime" found in §924(c)(2). As Henderson pled guilty one count of Possession of a Firearm in Furtherance of a *Drug Trafficking Crime* in violation of 18 U.S.C. §924(c)(1)(A), *Davis* does not apply to Henderson or provide a basis for granting any § 2255 relief.[2] *See, Corredor v. United States*, 2020 WL 5850960, at *2 (W.D.

---

[2] This is true whether Henderson brings the claim directly or it is construed as a claim that counsel was ineffective for failing to make a *Davis* argument, as counsel is not ineffective for failing to make futile arguments. *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

11

Mo. Oct. 1, 2020); *Carter v. United States*, 2020 WL 758954, at *2 (E.D. Mo. Feb. 14, 2020); *Higgins v. United States*, 4:19CV2863 RWS , 2020 WL 587690, at *4 (E.D. Mo. Feb. 6, 2020).  Ground 4 of Henderson's § 2255 motion is denied.

### C. I Will Not Issue a Certificate of Appealability

As Henderson has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that movant's motion to amend [7] is granted, and movant's motion for evidentiary hearing [8] is denied.

**IT IS FURTHER ORDERED** that movant's motion [1] and amended motion [7] to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 are denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Henderson has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

                                                          RODNEY W. SIPPEL
                                                         UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2022.